(May 27, 1902.)

## FIRST NATIONAL BANK OF KENDRICK v. CARTER.

[69 Pac. ·123.]

PROMISSORY NOTE—ASSIGNMENT—PAYMENT.—A judgment in an action upon a promissory note which was assigned by an agent of the payee, who held the same for collection, after maturity, and after the same had been paid, will be reversed on appeal, said judgment being unsupported by the evidence.

(Syllabus by Sullivan, J.)

APPEAL from District Court, Nez Perces County.

I. N. Smith, for Appellant.

The evidence does not show any transfer to the respondent. It shows that the respondent paid the note. The respondent was not a party to the note and not liable therefor contractually. (*Wilson v. Wilson,* 6 Idaho, 597, 57 Pac. 708; *People's etc. Bank v. Craig,* 63 Ohio St. 374, 81 Am. St. Rep. 639, 59 N. E. 102, 52 L. R. A. 872.) The evidence shows that the note was first held by respondent, as a collection merely; that respondent failed to protest the note; that respondent was advised that it was necessary to protest in order to hold the maker; that thereafter respondent paid the note on account of this presumed liability. This is not a transfer of the note. A transfer for collection is a qualified transfer. It is restrictive and does not pass title. (Randolph on Commercial Paper, sec. 726; *Sweeney v. Easter,* 1 Wall. 166; *First Nat. Bank v. Reno Co.,* 3 Fed. 270; *First Nat. Bank v. Cregg,* 79 Pa. St. 384; *Cecil Bank v. Farmers' Bank,* 22 Md. 148; *Bank of Metropolis v. First Nat. Bank,* 19 Fed. 301.) In such a case the indorsee is a mere agent of the indorser. (*Claflin v. Wilson,* 51 Iowa, 15, 50 N. W. 578.) The answer and the evidence affirmatively show a settlement with Lee & Co. The compromise as between themselves and Lee & Co. gave to appellant the balance of the indebtedness; released him from payment thereof. This is an absolute defense. That the rule of "part payment" on an ex-

isting debt, not satisfying such, is abrogated under such circumstances, see *Stewart v. Hidden,* 13 Minn. 45; *Tyler etc. Co. v. Chevelier,* 56 Ga. 494; *Linthicum v. Linthicum,* 2 Md. Ch. 21; *State v. Story,* 57 Mass. 738; *Lamprey v. Lamprey,* 29 Minn. 151, 12 N. W. 514; *Stafford v. Bacon,* 1 Hill, 532, 37 Am. Dec. 366; *Bender v. Sampson,* 11 Mass. 42; *Willing v. Peters,* 12 Serg. & R. 177; *Ingersoll v. Martin,* 68 Md. 67; *Spitze v. Baltimore etc. Ry. Co.,* 75 Md. 162, 32 Am. St. Rep. 378, 23 Atl. 307.

George W. Tannahill, for Respondent.

The special contract between the indorser and the indorsee does not in any manner affect the rights of the maker. The blank indorsement of a note transfers the title. (*Frost v. Fisher,* 13 Colo. App. 322, 58 Pac. 872.) The mere possession of a negotiable instrument produced in evidence by the indorsee imports prima facie that he acquired it bona fide in the usual course of business. (*Parker v. Gilmore,* 10 Kan. App. 527, 63 Pac. 20; *Spreckles v. Butler,* 128 Cal. 645, 61 Pac. 379.) "The production of a note by a plaintiff with no payments indorsed thereon is prima facie proof of nonpayment." (*Brennon v. Brennon,* 122 Cal. 440, 68 Am. St. Rep. 46, 55 Pac. 124; *Sturgis v. Baker,* 39 Or. 541, 65 Pac. 810.) Where the intention to continue the existence of a note and not to cancel it by payment is made evident when the money is paid to the collecting agent appointed to receive it, and the owner of the note receives the amount due to him, the transaction is a purchase. (*Dodge v. Trust Co.,* 93 U. S. 920.)

SULLIVAN, J.—This action was brought to recover on a promissory note dated August 17, 1897, for $200, due October 15th after date, in favor of J. H. Lee & Co., of Boston, Massachusetts, and executed by the appellant. The complaint contains the usual allegation required in such cases, and also alleges the assignment of said note by J. H. Lee & Co., to the respondent, the First National Bank of Kendrick. The answer admits the execution of said note, denies the assignment and nonpayment thereof, and, as an affirmative defense, alleges

that a compromise with the various creditors of appellant at twenty and twenty-five cents on the dollar of appellant's indebtedness was made and paid and accepted in full release, satisfaction, and discharge of appellant's indebtedness, and that, at the time of said compromise and payment, J. H. Lee & Co. were the owners of said note, and gave to appellant the balance of the indebtedness evidenced by said note, and receipted against said note, representing to appellant that said note, had been mislaid, and that such settlement of said note by appellant was without knowledge or notice of a transfer thereof, and avers that said transfer was made after maturity. Upon these issues the case was tried before a jury, and verdict and judgment were given and entered in favor of respondent (plaintiff).

Numerous errors are assigned on the admission and rejection of evidence, the insufficiency of the evidence to justify the verdict, and to the giving and refusing to give certain instructions to the jury.

The following facts appear from the record:

Said promissory note bears the following indorsements:

"First National Bank, Kendrick, Idaho. Collection. No. 4,624. J. H. Lee & Co."

"Pay to order of M. Jacobs, Cashier, for Col., for account of [scratched out]. Continental National Bank of Boston."

"Without recourse on us. Emmons & Emmons, Trustees. Claim No. 8,966. Received Dec. 14, 1897. Emmons & Emmons, Portland, Oregon."

"Pay to the order of the First National Bank of Kendrick. First National Bank of Portland, Oregon, G. E. Whittington, Cashier."

Math Jacobs, cashier of the plaintiff bank, which bank is the respondent in this appeal, testified that respondent first received said promissory note from the bank in Boston for collection on August 4, 1897, and that respondent bank became the owner of said note on the nineteenth day of March, 1898; that after receiving said note for collection, and before its maturity, he notified the appellant that said bank held the note for collection. Said Jacobs also testified that respondent

became the owner of said note through the First National Bank of Portland, Oregon. Witness also testified that, owing to the fact that respondent had failed to protest the note, it was compelled to take the note up, and that appellant offered to settle the note by paying twenty cents on the dollar. On cross-examination the witness testified that the respondent received a letter from Emmons & Emmons, and, as near as witness could remember, they wrote that it had been sent them by J. H. Lee & Co., and that respondent had failed to protest the note, and that respondent was liable, and they wanted respondent to pay the note, and respondent informed Emmons & Emmons that, if they would assign the note to respondent and forward the note, respondent would take it up. The note was forwarded, and respondent paid it. Witness testified that he informed appellant that respondent had taken up said note. Also that respondent took up said note because it was liable, and that: "We never got any such word from Lee & Co. We got it through their collectors, Emmons & Emmons." It is thus shown that respondent knew that Emmons & Emmons were merely collectors of J. H. Lee & Co., and that said note was the property of said Lee & Co. It also appears at the time said note became due that J. H. Lee & Co. were the only indorsers on said note, and that they were the owners thereof, and had simply indorsed it for collection. Under that state of facts, it is difficult for us to understand why respondent became liable to pay said note because it neglected to protest payment thereof, when the only indorsers were the owners thereof, and they only indorsed it for collection.

It is shown by the testimony of appellant that on November 9, 1899, more than eighteen months after respondent claimed to have paid said note, he was owing J. H. Lee & Co., on two promissory notes (one of them being note sued on in this action) and on an open account, the sum of $583.68, and that he settled said entire sum by paying to said J. H. Lee & Co., $142.92; that they gave him a receipt in full of said indebtedness, in which receipt is enumerated the note dated August 17, 1897, payable October 15, 1897, which is the note sued on herein. The appellant also offered in evidence a written statement from

J. H. Lee & Co., to him of his indebtedness to them, dated November 9, 1899, in which is enumerated the note sued on herein, in which statement J. H. Lee & Co. requested appellant to remit. The record contains a letter from J. H. Lee & Co. to appellant, dated November 9, 1899, in which they say: "We have this day sent to the Lewiston National Bank statement of your account, one note, and a receipt in full for all of your indebtedness to us. We specify on this receipt what this indebtedness consisted of One of your notes has been mislaid, and we have thus far failed to find same, but will make a further search, and, should we find it, will send same to you. Our receipt will fully protect you, as it states that the indebtedness consisted of account, and describes the two notes. We trust this explanation will be satisfactory." The respondent Carter also testified that he never received any notification from the respondent bank that said bank was the owner of said note prior to the time he settled the note with J. H. Lee & Co., and the first knowledge he had that said bank claimed to own the note was in the fall of 1900.

There also appears in the record the following letter, referring to the note sued on herein:

"Lewiston, 10/12/1900.

"Mr. N. H. Carter, Howard, Idaho.

"Dear Sir: We hold for collection against you a note in favor of J. H. Lee & Co. for $200, on which there is now due $263. Please give same immediate attention, as our instructions are positive concerning same.

"Yours truly,

"G. W. TANNAHILL."

The record also contains a letter to J. B. West (who was attorney for appellant, and made settlements with most of appellant's creditors) from J. H. Lee & Co., dated November 9, 1899, in which they say: "At request of N. H. Carter, we have this day sent to Lewiston National Bank statement of our accounts against him. We also send note. There is another note, but it has become mislaid, and we cannot find same. We have made receipt to cover this fully, and, should

we find the note, will send it to Mr. Carter." Said West testified as follows: "By virtue of the letter [referring to the one just above quoted] I paid the First National Bank $142.92, . . . . and received a receipt from Lee & Co. for Carter."

The witness Math Jacobs, cashier of respondent, was recalled, and testified that he did have a conversation with appellant, in which appellant wanted him to accept twenty-five cents on the dollar for said note, and he told him that he would not do so, because the bank would be legally held on the note, and have to pay it in full, and he (appellant) would have to make a settlement in accordance with what the bank would have to pay.

The foregoing is the substance of the evidence given at the trial. There is an apparent conflict as to whether the respondent bank notified appellant that it owned said note, but the conflict is not substantial. Appellant's testimony is corroborated by the statement of account and letters from J. H. Lee & Co. to the appellant and to his attorney, dated November 9, 1899, claiming to own said note, their settlement with appellant for it, and receipting to him in full for it, and stating that said note has been mislaid, and, if found, it would be sent to appellant. We think that the legal evidence offered on this point, and much of it rejected by the trial court, establishes the fact that, if respondent purchased said note, it purchased it after it became due, of parties who had no authority to sell it. It is not shown that Emmons & Emmons or the First National Bank had authority to sell said note, and it is shown by the evidence of the cashier of respondent that it paid said note long after it became due, upon the flimsy pretext that it was liable because it did not protest said note, when the evidence shows that the only indorsers thereon were the owners of the note. The evidence clearly shows that all of the indorsements on said note were for collection merely, and not for the purpose of selling said note, except the last to respondent. That being true, what was the necessity of protesting a note that belonged to Lee & Co., they being the only indorsers? Emmons & Emmons held said note for collection only. The evidence shows that fact, and fails to show that they had any

authority to sell it. In fact, the evidence shows that J. H. Lee & Co. claimed to appellant, in several different written communications, that said note had been mislaid, and, if found, they would send it to him, as late as November 9, 1899, when the respondent claimed to have been forced to pay said note on March 19, 1898.

The fifth assignment of error was well taken. The letter from Jacobs to Emmons & Emmons ought not to have been admitted in evidence. It will not be necessary for us to comment upon each of the errors assigned on the introduction of evidence, or the offer to introduce evidence, for the reason that the views herein expressed indicate what of such evidence should have been rejected, and what should have been received.

It was error to refuse to give the following instructions requested by counsel for appellant, to wit: Requests Nos. 1, 3, 4, 5, 6, and 7.

Many of the instructions given by the court on its own motion are assigned as error, and it will serve no good purpose to repeat them here. The lengthy and prolix instructions as to the burden of proof, the party holding the affirmative, credibility of witnesses, and the weight to be given to the testimony, we think, were more likely to mislead the jury than to give them any assistance in arriving at a correct verdict. Such lengthy instructions serve to bewilder a jury, and ought not to be given. The instruction in regard to "a contract between two parties, the minds of the two parties must come together," etc., ought not to have been given. And it was error to instruct the jury that where one owes a debt which is due, and enters into an agreement to settle it for twenty or twenty-five cents on the dollar, it is not valid, as in this case the evidence shows that such a settlement was made, and the creditor received the twenty or twenty-five cents on the dollar, and gave the debtor a receipt in full for the debt; and, as the creditor is not here complaining, no third party can object to such settlement. It was error to give instructions included in folios 217-222, pages 75, 76, of the transcript. These instructions are not applicable to the issues and the legal evidence in this case.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.  Costs are awarded to the appellant.

Quarles, C. J., and Stockslager, J., concur.